**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3476-19

ONN RAPEIKA,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted March 1, 2022 – Decided March 14, 2022

Before Judges Currier and DeAlmeida.

On appeal from the New Jersey Department of Corrections.

Joseph L. Nackson and B. Alan Seidler (Law Offices of B. Alan Seidler) of the New York bar, admitted pro hac vice, attorneys for appellant (B. Alan Seidler and Joseph L. Nackson, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Raajen V. Bhaskar, Deputy Attorney General, on the brief).

PER CURIAM

Onn Rapeika, a former prison inmate, appeals from the March 11, 2020 final agency decision of the Department of Corrections (DOC) adjudicating him guilty of prohibited act *.005, threatening another with bodily harm or with any offense against his or her person or his or her property in violation of N.J.A.C. 10A:4-4.1(a)(2)(ii). We affirm.

I.

On February 26, 2020, a corrections sergeant issued a written report detailing the following events: During a therapy session at the prison, Rapeika made threatening and derogatory statements to his therapist about a member of the medical staff. He said that the staff member was a "sub-par doctor, lesbian, nazi, whore" and that "it is getting to the point where she won't be able to reach that button or that whistle fast enough." This was a reference to the safety devices available to medical staff members when meeting in close contact with an inmate. When questioned by his therapist about those remarks, Rapeika said "everything in [the] prison is a false safety" and that "all it takes is one kick and I can destroy the computer or break something." The therapist reported the remarks to the sergeant.

2

The following day, a corrections sergeant delivered a written disciplinary charge to Rapeika. He was alleged to have violated *.005 based on the comments he made to his therapist. Although Rapeika did not deny having made the statements, he told the sergeant that he did not threaten anyone.

A hearing was held the following day. Rapeika was assisted by inmate counsel substitute. The hearing officer reviewed the sergeant's report, as well as documents memorializing Rapeika's pre-hearing detention and a post-incident mental health evaluation. She did not share the mental health evaluation with Rapeika for safety reasons.

Rapeika did not call witnesses and declined cross-examination of the sergeant. Although he entered a not guilty plea, Rapeika did not deny making the statements. He instead offered the following explanation for his behavior:

> I've been going through this with her for medication. I told him that everything in this prison is a false safety. I was disgusted and was not happy with saying there's nothing to do. I was frustrated. I lashed out.

Rapeika's counsel substitute requested leniency.

The hearing officer adjudicated Rapeika guilty of the offense. She explained that Rapeika produced no evidence to discredit the sergeant's report and admitted he lashed out verbally at a member of the medical staff. Noting that threats must be taken seriously in the prison context, and that Rapeika had

3

previously been charged with a violent disciplinary offense, the hearing officer sanctioned him to 120 days in administrative segregation, a ninety-day loss of commutation credits, and a ten-day loss of recreational privileges.

Rapeika filed an administrative appeal. He requested that he be shown leniency because he was experiencing mental health issues at the time of the incident and did not mean to convey a threat. On March 10, 2020, the prison's Assistant Superintendent upheld the hearing officer's decision, finding that the DOC complied with procedural safeguards, the sanctions were appropriate, and Rapeika's request for leniency was denied.

This appeal follows. Rapeika argues his due process rights were violated because: (1) the DOC should have used a "clear and convincing evidence" standard when adjudicating his disciplinary charge; (2) the DOC failed to make a verbatim transcript of his disciplinary hearing; (3) the hearing officer reviewed a mental health record not shared with him; (4) he threatened only to destroy property and not to injure a person; and (5) he was disciplined for statements he made during a therapy session.

## II.

Our review of a final agency decision is limited. Reversal is appropriate only when the agency's decision is arbitrary, capricious, or unreasonable, or

unsupported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also In re Taylor, 158 N.J. 644, 657 (1999) (holding that a court must uphold an agency's findings, even if it would have reached a different result, so long as sufficient credible evidence in the record exists to support the agency's conclusions). "[A]lthough the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010) (quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)).

"A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In other words, it is "evidence furnishing a reasonable basis for the agency's action." Figueroa, 414 N.J. Super. at 192 (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (2002)).

In addition, an inmate is not accorded "the full panoply of rights" in a disciplinary proceeding afforded a defendant in a criminal prosecution. Avant

5

v. Clifford, 67 N.J. 496, 522 (1975).  Instead, prisoners are entitled to: written notice of the charges at least twenty-four hours prior to the hearing; an impartial tribunal; a limited right to call witnesses and present documentary evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed; and, where the charges are complex, the assistance of a counsel substitute.  Id. at 525-33; accord Jacobs v. Stephens, 139 N.J. 212 (1995); McDonald v. Pinchak, 139 N.J. 188 (1995).

Having carefully reviewed the record, we are satisfied that the DOC's decision is supported by substantial credible evidence and that the agency afforded Rapeika the due process protections to which he was entitled.  There is no basis on which to overturn the agency's decision.

Rapeika's makes several arguments before this court that he failed to raise at the agency.  We generally "do[] not consider issues not raised at an administrative hearing."  In re Stream Encroachment Permit No. 0200-04-002.1 FHA, 402 N.J. Super. 587, 602 (App. Div. 2008).  However, because Rapeika was represented by an inmate counsel substitute at the agency, we have reviewed his arguments.  We find them to lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  The standard of proof applicable to DOC

disciplinary hearings is established in a regulation and has been accepted by the courts. The threatening nature of Rapeika's statement regarding the doctor's ability to reach the alarm button is evident, as is the propriety of a mental health professional warning others of a patient's threat of violence during a therapy session. See N.J.S.A. 2A:62A-16. "The DOC is not required to provide a verbatim record of disciplinary proceedings." Blackwell, 348 N.J. Super. at 121 (citing McDonald, 139 N.J. at 201-02).

Finally, because no objection was raised below, the DOC was deprived of the opportunity to develop a record justifying the hearing officer's decision to withhold the mental health evaluation from Rapeika. It is plain, however, that the security of the prison could be jeopardized if inmates with mental health conditions were permitted to view the written observations made about them by their treating mental health professionals. At any rate, the DOC represents to the court that it produced a copy of the mental health evaluation at issue here to Rapeika's counsel. His brief identifies no specific information in the evaluation that he claims undermines the validity of the agency's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3476-19